UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHELLE NOGESS                                      CIVIL ACTION

VERSUS                                               NO. 16-15227
                                                     c/w 16-15234

POYDRAS CENTER, LLC et al.                           SECTION: A (5)

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 128)** filed by Defendant Clampett Industries, LLC d/b/a EMG ("EMG"). Also before the Court is a **Motion for Summary Judgment (Rec. Doc. 129)** filed by Defendant Velocity Consulting, Inc. ("Velocity"). Plaintiff Michelle Nogess opposes both motions. (Rec. Doc. 142). EMG has replied (Rec. Doc. 157) and Velocity has replied. (Rec. Doc. 159). The motions, set for submission on March 7, 2018, are before the Court on the briefs without oral argument. Having considered the motions, memoranda of counsel, the record, and the applicable law, the Court finds that EMG's **Motion for Summary Judgment (Rec. Doc. 128)** is **GRANTED** for the reasons set forth below. The Court further finds that Velocity's **Motion for Summary Judgment (Rec. Doc. 129)** is **GRANTED** for the reasons set forth below.

**I.  Background**

This matter arises out of an accident wherein Tyrone Nogess drove a vehicle through the barrier system of the Poydras Center parking garage, fell to the ground in his vehicle, and died. His widow, Plaintiff Michelle Nogess brought this lawsuit on behalf of her husband, herself, and her children against Defendants: Poydras Center LLC, Poydras Center Manager, Inc, Bobby Schloegel,[1] the Travelers Casualty Company, Clampett Industries LLC, and Velocity Consulting,

---

[1] Bobby Schloegel has since been dismissed with prejudice from this lawsuit. (Rec. Doc. 189, p. 3).

1

Inc. Plaintiff Debra Yates also brought suit against Defendants claiming emotional distress and property damages as a result of sitting in her car next to the impact zone where Tyrone Nogess ultimately fell to his death in the vehicle.[2]

The uncontested facts surrounding the incident are as follows: The accident at issue occurred on June 10, 2015 at approximately 7:05 a.m. in the parking garage of the Poydras Center, located at 650 Poydras Street, New Orleans, Louisiana. Tyronne Nogess was operating a truck that broke through the vehicle barrier restraint system on the fifth floor parking garage of the Poydras Center. The claims against Defendants at issue in this motion, EMG and Velocity, stem from the Property Condition Reports and Property Condition Assessments composed and rendered by EMG and Velocity. Plaintiff contends that both EMG and Velocity were negligent in making their assessments and in composing their respective reports, thus causing the alleged defects in the vehicle barrier restraint system to go unnoticed, and ultimately causing Mr. Nogess's death.

Defendant EMG is in the business of providing professional commercial real estate due diligence services to its clients, and entered into a Master Servicing Agreement with Lehman Brothers Holdings, Inc. ("Lehman Brothers") on November 24, 1998. On November 20, 2002, approximately thirteen years before the June 10, 2015 incident, EMG conducted an inspection of the Poydras Center building and, thereafter, rendered a Property Condition Report on or about November 25, 2002.

On June 7, 2010, approximately five years before the June 10, 2015 incident, Velocity contracted with Hertz Investment Group ("Hertz") to perform a Property Condition Assessment of the Poydras Center property. John Hetner, project manager for Velocity, performed a Property Condition Assessment consisting of a site visit and visual walk-through survey on June 7, 2010.

---

[2] Plaintiff Yates has since settled her claims in their entirety against Defendants. *See* (Rec. Doc. 185).

In conjunction with the Property Condition Assessment, Velocity also prepared and rendered a Property Condition Report on June 30, 2010. (Rec. Doc. 129-5).

In summary, Defendants EMG and Velocity performed visual inspections of the Poydras Center prior to the date of the accident. Plaintiff contends that EMG and Velocity should have noticed during their visual inspections of the property that the vehicle barrier restraint system at the Poydras Center's parking garage was defective, and further that EMG and Velocity should have alerted the property owners of the alleged defect. Plaintiff further maintains that had EMG or Velocity alerted the property owners of the alleged defect in the vehicle barrier restraint system, the defect would have been corrected and the vehicle being driven by Mr. Nogess would have been prevented from crashing through the glass windows of the Poydras Center garage. Plaintiff specifically alleges that both Velocity and EMG were negligent in:

a. Failing to properly inspect the parking garage;
b. Failing to note the dangerous conditions of the vehicle barrier system in their respective inspection reports, or alternatively, failing to note that the vehicle barrier system was not addressed in the inspection reports;
c. Failing to report serious defects and/or violations of applicable life and safety codes to the appropriate code enforcement officials and/or the building owners and/or managers;
d. And all other acts of negligence, and violation of applicable codes as may be shown at trial.

(Rec. Doc. 1-1, pp. 32–33). EMG and Velocity now seek summary judgment seeking to have the claims brought against them dismissed. EMG and Velocity argue that as a matter of law, neither owed Mr. Nogess a duty of care in performing their assessments of the Poydras Center property.

II. **Legal Standard**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material

fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255).

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

**III.     Law and Analysis**

The substantive law governing this negligence action is Louisiana state law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Under *Erie*, this Court must first look to the final decisions of the Louisiana Supreme Court in order to determine Louisiana law. *Howe v. Scottsdale Ins. Co.*, 204 F.2d 624, 627 (5th Cir. 2000) (citing *Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994)). If the Louisiana Supreme Court has not ruled on an issue, then a federal court must make an "*Erie* guess" to determine "as best it can" what the Louisiana Supreme Court would decide. *Id.* (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999)). In making an *Erie* guess in the absence of a ruling from the state's highest court, a federal court may look to the decisions of intermediate appellate state courts for guidance. *Id.* (citing *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir. 1998)).

Louisiana courts employ a duty-risk analysis to determine whether the defendant can be liable for the plaintiff's injuries. Under this analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff ("the duty element"), the defendant breached the duty, and the risk of harm was within the scope of protection afforded by the duty breached. *Cuevas v. City of New Orleans*, 769 So.2d 82, 85 (La. App. 4 Cir. 2000) (citing *Hunter v. Dep't of Transp. & Dev.*, 620 So.2d 1149, 1150 (La. 1993)). Whether the defendant owed the plaintiff a duty is a "threshold issue in any negligence action." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Meany v. Meany*, 639 So.2d 229, 233 (La. 1994)). The duty element is a question of law to be decided by the court, and the inquiry is whether the plaintiff has any law, including that arising from general principles of fault, to support his claim. *Id.* at 85–86. Under Louisiana law, fault is a broad concept: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315.

Plaintiff brings identical theories of negligence against both EMG and Velocity. *See* (Rec. Doc. 1-1, pp. 32–33).[3] At the crux of both motions is the duty element: whether Defendants EMG and Velocity owed Mr. Nogess a duty of care under Louisiana's duty-risk analysis for negligence. While EMG and Velocity have similar legal arguments seeking to have the claims against them dismissed, the facts surrounding these Defendants slightly differ, requiring the Court to analyze the motions separately. For instance, EMG issued its Report concerning the Poydras Center property in 2002, while Velocity issued its Report in 2010. Also, EMG and Velocity entered into separate contracts with different entities in relation to the work they performed on the Poydras

---

[3]Also, Plaintiff's **Opposition to Defendants' Motions for Summary Judgment (Rec. Doc. 142)** addresses both EMG's **Motion for Summary Judgment (Rec. Doc. 128)** and Velocity's **Motion for Summary Judgment (Rec. Doc. 129)** collectively.

Center. Therefore, the Court will analyze each motion separately, starting with EMG's **Motion for Summary Judgment (Rec. Doc. 128)** followed by Velocity's **Motion for Summary Judgment. (Rec. Doc. 129)**.

*A. EMG*

EMG is in the business of providing professional commercial real estate due diligence services to its clients. EMG entered into a Master Servicing Agreement with Lehman Brothers Holdings, Inc. on November 24, 1998. (Rec. Doc. 142-4, p. 2 ¶ 4). Pursuant to the Master Servicing Agreement, Lehman Brothers solicited the services of EMG to conduct a Property Condition Assessment of the Poydras Center building. The site visit to the Poydras Center was conducted by EMG's Field Observer Arturo O. Salow, R.A. on November 20, 2002. A Property Condition Report was prepared by Mr. Salow and reviewed by Dirk A. Griffin, R.A., EMG's PCR Review/Senior Technical Relationship Manager. The Property Condition Report was then sent to Lehman Brothers on January 13, 2003.

EMG maintains that the purpose of the assessment was solely to assist in the determination of whether to make a loan evidenced by a mortgage note secured by the Poydras Center. (Rec. Doc. 128-1, p. 3) (citing Rec. Doc. 128-4, p. 31 (Exhibit D to the Master Servicing Agreement)). Moreover, the Property Condition Report states, "The purpose of this report is to assist the Client in evaluating the physical aspects of this property and how its condition may effect [sic] the Client's financial decisions over time." (Rec. Doc. 128-6, p. 10). In essence, EMG's position is that the Property Condition Report was composed purely to assist potential financiers of the Poydras Center in making informed financial decisions. EMG argues that the Property Condition Report was significantly limited in scope, thus, preventing any third-parties from potentially relying on the findings of the Report.

Plaintiff contends that the Poydras Center's vehicle barrier restraint system was visually defective and EMG's Field Observer failed to note the defect in his Property Condition Report. Plaintiff further avers that had it been written properly, EMG's Report would have alerted the property owners of the defect and the defect would have been remedied. Plaintiff maintains that the negligence of EMG and Velocity in failing to note the defect allowed the defect to persist, resulting in Mr. Nogess's death. Plaintiff argues that there exists a genuine issue of material fact regarding who could reasonably be expected to rely upon EMG's Property Condition Report. Plaintiff also contends that "there is a dispute as to the evidence relevant to the visually apparent nature of the defect(s) in the vehicle barrier system in the Poydras Center garage." (Rec. Doc. 142, p. 3).

EMG contends that Plaintiff cannot satisfy the necessary burden of proving that EMG owed Mr. Nogess a duty in conducting the Property Condition Assessment of the Poydras Center for Lehman Brothers. EMG takes the position that under Louisiana law, an inspector of buildings for limited purposes, such as a determination of whether to make a commercial loan, does not owe a duty to all persons that subsequently may be injured due to conditions within the building.

In determining whether EMG owed a duty to Mr. Nogess, this Court looks to the Louisiana Supreme Court's seminal decision on the duty element—*Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La. 1993). In *Audler v. CBC Innovis, Inc.*, 519 F.3d 239 (5th Cir. 2008), the U.S. Fifth Circuit recognized that under Louisiana law, in determining whether a duty is owed where a plaintiff alleges negligent representation and there is an absence of privity of contract or fiduciary relationship between the plaintiff and alleged tortfeasor, courts consider the factors articulated by the Louisiana Supreme Court in *Barrie*.[4] *Audler*, 519 F.3d at 250.

---

[4] While some courts disagree with the Louisiana Supreme Court's conclusion in *Barrie*, courts find the *Barrie* factors sufficient to determine whether a duty is owed under Louisiana's duty-risk analysis. *See Nautimill S.A. v. Legacy*

The *Barrie* factors are as follows: (1) courts must decide whether the tortfeasor could expect that the plaintiffs would receive and rely upon the information, (2) whether the plaintiffs are members of the limited group for whose benefit and guidance the report was contracted and supplied, (3) whether the report is prepared in the context of a business transaction for which the alleged tortfeasor received compensation, and (4) whether extending tort liability would serve public policy. *Id.*

In *Barrie*, the seller of a home obtained a termite inspection report that negligently concluded that the home had no evidence of a termite infestation. The buyers of the home sued the termite inspector, alleging negligent misrepresentation via faulty information contained in the termite inspection report. The Louisiana Supreme Court held that the termite inspector owed the buyers a duty to provide accurate information in the report even though the buyers were a third-party to the contract between the inspection company and the seller. The court noted that "Louisiana is a jurisdiction which allows recovery in tort for purely economic loss caused by negligent misrepresentation when privity of contract is absent." *Barrie*, 625 So.2d at 1014.

Applying the first *Barrie* factor, the Court finds that the alleged tortfeasor—EMG—could not have expected that Mr. Nogess would receive and rely upon EMG's Property Condition Report. In *Barrie*, a duty was owed to plaintiffs (home-buyers) even though they were a third-party to the defendant termite inspection company and the seller—*i.e.*, without privity of contract or direct or indirect contact—because plaintiffs were known to the defendant termite inspection

---

*Marine Transportation, LLC*, No. 15-1065, 2016 WL 4733285 (E.D. La. July 7, 2016) (Judge Vance applying the *Barrie* factors to determine that the seller of a vessel assumed a duty to avoid negligently misrepresenting the vessel's capabilities when the seller spoke to the buyer's agent.); *see also Gulf Production Co., Inc. v. Hoover Oilfield Supply, Inc.*, 672 F. Supp. 2d 752, 757–59 (E.D. La. Nov. 20, 2009) (Judge Lemelle applying the *Barrie* factors to determine that although the plaintiffs were not privy to the underlying contract, they were intended and reasonably foreseeable users of the information that Defendants provided; thus, defendants owed a duty.); *see also Audler*, 519 F.3d at 249–253 (Fifth Circuit Judge Carl Stewart applying the *Barrie* factors to determine that under Louisiana law, a company retained by a lender to perform a flood zone determination on a borrower's property does not owe a duty to the borrower.).

company as intended users of the report. *Id.* at 1016. In the present case, EMG could not have known that when it issued its Property Condition Report, approximately thirteen years before the incident, that Mr. Nogess would rely on the Report. Moreover, the record lacks any evidence that Mr. Nogess received the Property Condition Report before the incident. Thus, the first *Barrie* factor is not satisfied.

Applying the second *Barrie* factor, the Court finds that Mr. Nogess was not a member of the limited group for whose benefit and guidance the Property Condition Report was prepared. In fact, the Property Condition Report expressly designates the limited group that the Report was composed to benefit. The Master Servicing Agreement between EMG and Lehman Brothers provides that the services, *reports*, and other related work product, provided by EMG to Lehman Brothers shall not be relied upon by any third-parties. Specifically, paragraph 2.8 of the Master Servicing Agreement provides:

> 2.8 <u>Reliance</u>. The Services shall be performed on behalf of and solely for the exclusive use of the Client and those additional parties to whom reliance has been granted, as described on Exhibit "D," for the purposes described in this Agreement, and for no other purpose. The Services, and all reports and other related work product provided by EMG, may not be relied upon by any other person or entity without the advanced written consent of EMG. The Client may furnish "courtesy" copies of EMG's reports or related work product to the Client's borrowers, upon the condition that no borrower shall be entitled to assert privity with EMG, claim status as a third party beneficiary, or rely on EMG's report or work product, without first having entered into a separate written agreement with EMG (satisfactory to EMG in all respects) which grants the borrower the right to so rely.

(Rec. Doc. 128-4, p. 4). Exhibit D goes on to further define the "limited group" for whose benefit and guidance the Master Servicing Agreement—and therefore, the Property Condition Report—was contracted and supplied. Exhibit D provides as follows:

> This report has been prepared to assist in the determination of whether to make a loan evidenced by a note (the "Mortgage Note") secured by the property referred to in the Report. This Report may be relied upon by: (i) Lehman Brothers Holdings Inc., or an affiliate ("Lehman"); (ii) the trustee of a trust created in connection with

a securitization which includes the Mortgage Note or an interest therein; (iii) any other purchaser or assignee of the Mortgage Note or an interest therein, upon such purchaser's or assignee's written acceptance of and consent to the terms of this reliance letter. This report may be, for informational purposes only: (i) provided to any potential purchaser or assigned of the Mortgage Note or an interest therein; (ii) provided to any rating agency, rating securities which represent a beneficial ownership interest in a trust fund that consists of mortgage loans including the Mortgage Note or an interest therein; and (iii) referred to, quoted in or included with materials offering for sale the Mortgage Note or an interest therein. There are no third party beneficiaries (intended or unintended) to this Report, except as expressly stated herein. This report speaks only as of its date. We have performed our services and prepared this Report in accordance with applicable, general accepted engineering, environmental or appraisal consulting practices. We make no other warranties, either expressed or implied, as to the character and nature of such services and product.

*Id.* at p. 31.

Moreover, the Property Condition Report itself provides, in relevant part: "The purpose of this report is to assist the Client [Lehman Brothers] in evaluating the physical aspects of this property and how its condition may effect [sic] the Client's financial decisions over time." (Rec. Doc. 128-6, p. 10). The Property Condition Report further reiterates that it was prepared only to assist potential lenders in making a determination of whether to make a loan secured by a mortgage note secured by the Poydras Center property. *Id.* at p. 36. Because Mr. Nogess was not within the limited group for whom the Property Condition Report was prepared, Plaintiff cannot meet the second *Barrie* factor.[5]

The third *Barrie* factor requires courts to determine whether a report was prepared in the context of a business transaction for which the alleged tortfeasor received compensation. The *Barrie* court found it relevant that the defendant inspection company did not perform its services

---

[5] In *Barrie*, the Louisiana Supreme Court found that the termite inspector's knowledge of the intended use of his report "enlarged his duty to perform his services carefully, not only for the vendor who ordered the report, but for the vendee who was to use it." *Barrie*, 625 So.2d at 1017. In fact, the *Barrie* court noted that the termite inspector had knowledge that the home buyers would rely on his wood destroying insect report because the report specifically referenced the "sellers" and the "purchasers" of the dwelling. *Id.* at n. 18. Here, Plaintiff fails to point to any language in EMG's Master Servicing Agreement or the Property Condition Report that might show the Property Condition Report was to be relied upon in the future by third-parties making use of the Poydras Center parking garage.

gratuitously. *Barrie*, 625 So.2d at 1017. Rather, defendant gathered and conveyed information in the context of a business transaction for which defendant received compensation. *Id.*

In analyzing the third *Barrie* factor in *Audler*, the U.S. Fifth Circuit made a key distinction. In *Barrie*, the duty to obtain the termite inspection certificate arose via the purchase agreement between the seller of the home and the buyers. In *Audler*, a lender was required by federal regulations to request a flood zone determination on a certain property. The *Audler* court expounded upon the third *Barrie* requirement, finding that the necessary inquiry is not only whether the alleged tortfeasor was compensated for composing a report or conducting an inspection, but rather, whether the need to obtain an inspection or report arose out of an obligation to facilitate a transaction, or arose out of an obligation to comply with regulations and protect a lender's collateral. The Fifth Circuit made this distinction in *Audler* and found that the alleged tortfeasor in that case prepared the flood zone report not to facilitate the plaintiff's refinancing of a certain property, but to comply with NFIA regulations and to protect the lender's collateral.

The instant case seems to fall somewhere in between *Barrie* and *Audler*. Here, the Lehman Brothers entered into the Master Servicing Agreement with EMG and had EMG compose the Property Condition Report to assess and protect Lehman Brothers' collateral as a potential mortgage holder. It is unclear whether the property assessment was required by law. Thus, according to *Barrie* and *Audler*, the third factor does not seem to weigh in favor of either party. However, because the remaining three factors weigh heavily in favor of EMG, the Court finds EMG did not owe Mr. Nogess a duty of care.

The fourth *Barrie* factor requires the Court to determine whether extending tort liability in a particular instance would serve public policy. In *Barrie*, the Louisiana Supreme Court weighed

in on the public importance of licensed pest control operators rendering accurate and reliable information when composing their reports. In discussing the fourth *Barrie* factor, the court held:

> Tort liability extending to third persons for whose benefit and guidance the wood destroying insect report is supplied, promotes the maintenance of a high quality of services by the licensed structural pest control operator and imparts confidence in those services to the contracting party and to those persons who, due to current business practices, are expected to receive and rely upon the contents of the report. Therefore, the duty to use reasonable care and competence in obtaining the information for the wood destroying inspect report and communicating it to the prospective buyers of the dwelling existed as a matter of law.

*Barrie*, 625 So.2d at 1017–18. This Court cannot find similar policy implications in the present case. As stated above, the Louisiana Supreme Court reasoned that imposing liability on inspection companies so that those companies would be more diligent in composing their reports would benefit not only the contracting party, but also "those persons who, due to current business practices, are expected to receive and rely upon the contents of the report." *Id.* This reasoning assumes and relies on the fact that the alleged tortfeasor will know those parties that are expected to receive the tortfeasor's report. Focusing on this final factor, the *Barrie* court reasoned that "[t]he obligation for the liability is imposed by law based upon *policy* considerations due to the tortfeasor's knowledge of the prospective use of the information which expands the bounds of his duty of reasonable care to encompass the intended user." *Id.* (citing *Glanzer v. Shepard*, 135 N.E. 275 (1922)) (emphasis added).

The same reasoning cannot be applied here. In the instant case, Mr. Nogess was not a foreseeable third-party who was "expected to receive and rely upon the contents" of EMG's Property Condition Report. The Property Condition Report was composed solely for the benefit of potential investors. Moreover, as discussed above, Mr. Nogess was not in the scope of foreseeable third-parties that might have relied on the Property Condition Report.

The Court finds EMG's reasoning to be on point. Louisiana's public policy favors encouraging property condition inspections without exposing those who conduct the inspections to liability that is indefinable in time and class.[6] Like insurance companies, mortgage companies have an interest in making informed and educated decisions regarding their investments.[7] This Court does not find that expanding liability to an indeterminate degree anytime a property assessment condition report is rendered to be sound public policy. For these reasons, the fourth *Barrie* factor is not satisfied.

In opposition to EMG's Motion for Summary Judgment, Plaintiff focuses on whether the vehicle restraint barrier system was visually defective, and therefore, should have been noted in the Property Condition Report. However, the issue of whether there existed any visual deficiencies that should have been noted in the Report is immaterial as this Court finds that EMG undertook no duty to Mr. Nogess in rendering the Property Condition Report to Lehman Brothers. For these reasons, the Court finds Plaintiff's opposition unconvincing.[8]

---

[6] In rendering its analysis, the *Barrie* court found that the "fear of liability with indeterminate limits of amount, time and class, were not present." *See Barrie*, 625 So.2d at 1017 (citing *Ultramares Corporation v. Touche*, 174 N.E. 441 (1931). In the instant case, the Court finds that issues with indeterminate limits of time and class are present. The incident currently at issue occurred approximately thirteen years after the Property Condition Report was composed. Moreover, EMG's inspection of the Poydras Center property was limited to a class of potential investors and mortgagees of the Poydras Center property.

[7] "If any insurance company can escape tort liability altogether by not making any inspections on the premises of the insured, but may incur unlimited tort liability by making some inspections, it more than likely will decline to make any, unless required to do so by statute." *See Johnson v. American Mutual Liability Insurance Company*, 559 F.2d 382, 393 (5th Cir. 1977) (quoting *Kotarski v. Aetna Casualty & Surety Company*, 244 F.Supp. 547, 558–59 (E.D. Mich. 1965)).

[8] Plaintiff also contends that there exists "genuine issues of material fact as to whom could rely on the reports authored by [EMG]." (Rec. Doc. 142, p. 6). In doing so, Plaintiff relies on *Winget v. Colfax Creosoting*, a Louisiana Third Circuit Court of Appeals case that Plaintiff argues stands for the proposition that "Louisiana's system of civil law provides tort remedies to those who are harmed by the negligent acts of others, pursuant to Louisiana Civil Code Articles 2315 and 2316: thus, depending on the facts of a particular case, a negligent inspection can give rise to liability for injuries suffered by a third party." (Rec. Doc. 142, p. 6). However, this Court finds there are no outstanding issues of the material facts regarding the relationship between EMG, the Lehman Brothers, Mr. Nogess, and Plaintiff. The deposition testimony presented by Plaintiff concerns only EMG's obligations to Lehman in composing and rendering their Property Condition Report. Moreover, the *Winget* decision failed to apply the *Barrie* factors as that decision was rendered by the Louisiana Third Circuit before *Barrie*.

In light of this Court's analysis and application of the *Barrie* factors, as well as the unconvincing arguments presented by Plaintiff, this Court holds that the Louisiana Supreme Court would find that EMG did not owe a duty to provide Mr. Nogess with an accurate Property Condition Report or Property Condition Assessment, and therefore, rejects Plaintiff's negligence claims against EMG.

B. *Velocity*[9]

Five years before the June 10, 2015 accident, Defendant Velocity contracted with Hertz Investment Group ("Hertz") to perform a Property Condition Assessment of the Poydras Center property in connection with a loan transaction. (Rec. Doc. 142-5, p. 1 ¶ 1). John Hetner,[10] project manager for Velocity, performed a Property Condition Assessment consisting of a site visit and visual walk-through survey on June 7, 2010 of the Poydras Center. He then prepared a Property Condition Report issued by Velocity on June 30, 2010. *Id.* at ¶ 2. Like EMG, Velocity's Property Condition Report was prepared for purposes of evaluating the Poydras Center property's general condition in connection with a loan transaction secured by a mortgage on the property.

According to the language of the contract between Velocity and Hertz, Velocity's Property Condition Report expressly limited reliance on the Property Condition Report to Hertz, "its successors and assigns with respect to a loan secured by the subject property, and any rating agency, or any issuer or purchaser of, any security collateralized or otherwise backed by such a loan." (Rec. Doc. 129-4, p. 7). The "Reliance and Assignment" clause goes on to provide, "No other person or entity may rely on the report without the advance written consent of Velocity, and

---

[9] Velocity's position is substantially similar to EMG's. The only notable factual differences between EMG and Velocity are the time at which each respective Defendant performed its Property Condition Assessment, the investment group seeking a Property Condition Assessment, and the terms of the agreements entered into by these Defendants in relation to their work in the Poydras Center property.

[10] The parties do not dispute that Hetner was neither an engineer nor an architect and he was not retained to provide engineering or architectural services in preparing the Report. (Rec. Doc. 142-5, p. 1 ¶ 3).

no other third party beneficiaries are intended, except as described above, the client shall not assign the proposal, any report or any related work product, without the prior written consent of Velocity." *Id.*

Similar to its analysis of EMG, this Court is not tasked with determining whether Velocity's assessment of the Poydras Center property was faulty or whether the assessment fell below professional standards. Rather, this Court is tasked with determining whether Velocity owed a duty to Mr. Nogess in conducting the Property Condition Assessment and rendering the Property Condition Report. Once again, Louisiana's duty-risk analysis requires courts to first determine whether the defendant—Velocity—owed a duty of care to Mr. Nogess. The Court applies the same principles outlined above in its analysis of the duty element. In doing so, this Court must do as the Louisiana Supreme Court and apply the *Barrie* factors to determine whether a duty of care existed.

The first *Barrie* factor requires courts to decide whether the alleged tortfeasor could expect that the plaintiffs would receive and rely upon the alleged defective information. Applying this first *Barrie* factor, the Court finds that the alleged tortfeasor—Velocity—could not have expected that Mr. Nogess would receive and rely upon Velocity's Property Condition Report. As outlined above, in *Barrie*, the defendant termite inspection company knew that the intended users of its termite inspection report would not only be the sellers of the home, but also the buyers. Here, Plaintiff points to no evidence to rebut Velocity's contention that the Property Condition Report was intended to be relied upon only by "[Hertz], its successors and assigns with respect to a loan secured by the subject property, and any rating agency rating, or any issuer or purchaser of, any security collateralized or otherwise backed by such a loan." (Rec. Doc. 129-1, p. 4); *see also* (Rec. Doc. 129-4, p. 7). Moreover, Velocity could not have known that when it issued its Property

15

Condition Report that Mr. Nogess would rely on the Report approximately five years later. Moreover, the record lacks any evidence that Mr. Nogess received the Property Condition Report at any time before the incident. Thus, the first *Barrie* factor is not satisfied.

The second *Barrie* factor asks whether the plaintiff is a member of the limited group for whose benefit and guidance the report was contracted and supplied. Like the agreement between EMG and Lehman Brothers, the contract between Velocity and Hertz expressly states that third-parties shall not rely on the contents of the Property Condition Report. In *Barrie*, the buyers of the home subject to the termite inspection report were within the limited group of persons for whom the termite inspection report was composed. Here, the Court finds that pursuant to the agreement between Hertz and Velocity, Hertz, its successors, and a limited group of financial entities were within the limited group that the Property Condition Report was intended to benefit. Because Mr. Nogess was not within the limited group for whom Velocity's Property Condition Report was prepared, the second *Barrie* factor is not met.

The third *Barrie* factor requires the Court to determine whether the report was prepared in the context of a business transaction for which the alleged tortfeasor received compensation. As outlined above, *supra* p. 11, the U.S. Fifth Circuit in *Audler* made a key distinction between whether the need for an inspection or report arises out of an obligation to facilitate a transaction, or arises out of an obligation to comply with regulations and protect a lender's collateral. According to the deposition of Douglas Unger, the owner, manager, President, and CEO of Velocity, the Property Condition Report was prepared to evaluate the Poydras Center property's general condition in connection with a loan transaction. (Rec. Doc. 129-7, p. 4). Although the evidence surrounding Hertz's motive is scarce, it seems Hertz had the Property Condition

Assessment performed to facilitate a loan transaction.[11] Thus, as the case with EMG, according to *Audler* and *Barrie*, the third factor seemingly favors neither party. However, because the remaining three factors weigh heavily in favor of Velocity, the Court finds Velocity did not owe Mr. Nogess a duty of care.

The fourth *Barrie* factor requires the Court to determine whether extending tort liability in this instance would serve public policy. Here, the Court adopts is analysis from its public policy discussion regarding whether to impose a duty on EMG. *See supra* p. 11–13. This Court will not hold that expanding tort liability to an indeterminate degree anytime a property assessment condition report is rendered to be sound public policy.

Although separate entities, EMG and Velocity are virtually in the same position. These companies were not in the business of remedying building deficiencies. Rather, EMG and Velocity performed assessments of the Poydras Center property for the benefit of entities attempting to make sound financial decisions. Therefore, in light of this Court's analysis and application of the *Barrie* factors, this Court holds that the Louisiana Supreme Court would find that Velocity did not owe a duty to provide Mr. Nogess with a correct Property Condition Report or Property Condition Assessment, and therefore, would reject Plaintiff's negligence claims against Velocity.

Accordingly;

IT IS ORDERED the **Motion for Summary Judgment (Rec. Doc. 128)** filed by Defendant Clampett Industries, LLC d/b/a EMG is **GRANTED**. Plaintiff's claims against EMG are **DISMISSED WITH PREJUDICE**;

---

[11] The exhibits presented by Velocity lack information concerning Hertz's motive in having the Property Condition Assessment conducted. Unger's deposition testimony simply states that the "report [was] intended to be a part of a loan transaction." (Rec. Doc. 129-7, p. 4).

IT IS FURTHER ORDERED the **Motion for Summary Judgment (Rec. Doc. 129)** filed by Defendant Velocity Consulting, Inc. is **GRANTED**. Plaintiff's claims against Velocity are **DISMISSED WITH PREJUDICE.**

June 13, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE